**IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)**

**22ND CENTURY TECHNOLOGIES, INC.,**

     *Plaintiff,*

v.

**UNITED STATES,**

     *Defendant.*

Redacted Version

Case No. _____

Judge _____

███████████████████

**COMPLAINT**

For its bid protest complaint against the United States of America, Plaintiff 22nd Century Technologies, Inc. shows the Court as follows:

**Nature of the Action**

1.    This bid protest involves Request for Quote No. 2032H5-23-Q-08246 / GSA RFQ 1666303 (the "Solicitation") issued by the Department of the Treasury, Internal Revenue Service (the "Agency"). 22nd Century protests the Agency's decision to make award to Integrated Systems, Inc., Deloitte Consulting, LLP, Centennial Technologies Inc., Etelligent Group, LLC, and Noblis, Inc., but not 22nd Century

**Jurisdiction**

2.    This Court has jurisdiction to hear this bid protest pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. 28 U.S.C. § 1491(b)(1).

3.    The Agency awarded the task order at issue under a GSA Multiple Award Schedule contract. Thus, the Federal Acquisition Streamlining Act of 1994 does not deprive the

Court of jurisdiction.  *See Data Mgmt. Servs. Joint Venture v. United States*, 78 Fed Cl. 366, 371 (2007).

## The Parties

4.      22nd Century is a New Jersey corporation, headquartered in McLean, Virginia. Its principal place of business is 8251 Greensboro Drive, McLean, Virginia 22102.

5.      Defendant the United States of America, for all purposes relevant hereto, acted by and through the Agency.

## The Applicable Pleading Standard

6.      The *Twombly / Iqbal* pleading standard applies at the U.S. Court of Federal Claims.  *See Vanquish Worldwide, LLC v. United States*, 147 Fed. Cl. 390, 399 (2020). However, as (now) Chief Judge Kaplan noted in that decision, "a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'"  *Id.* (quoting *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, under *Iqbal*, "[a] claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Vanquish Worldwide, LLC*, 147 Fed. Cl. at 399 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

7.      The *Vanquish* decision involved appeals under the Contract Disputes Act.  *See id.* at 398.  The government moved to dismiss the plaintiff's complaint for failure to state a claim, alleging that its breach claims were based on "mere 'suspicions,'" that did not meet the pleading

standards under *Twombly* and Rule 8, RCFC. *Id.* at 401. Chief Judge Kaplan disagreed and

wrote:

> Fairly read, Vanquish's complaint alleges as a matter of fact that
> USTRANSCOM did not follow the OML process and that, had it been
> followed, Vanquish would have been assigned more missions than in fact
> it was assigned. **To be sure, Vanquish makes this allegation "on
> information and belief."** But that does not preclude it from meeting the
> *Twombly* plausibility standard, as the government contends. *See Arista
> Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (observing that
> "[t]he *Twombly* plausibility standard ... does not prevent a plaintiff from
> 'pleading facts alleged on information and belief' where the facts are
> peculiarly within the possession and control of the defendant, or where the
> belief is based on factual information that makes the inference of
> culpability plausible"); 5 Arthur R. Miller et al., *Federal Practice and
> Procedure* § 1224 (3d ed. 1998) ("Although there is no express
> authorization in the federal rules for pleading on information and belief,
> allegations in this form have been held to be permissible, even after the
> Twombly and Iqbal decisions."); *see also Exergen Corp. v. Wal-Mart
> Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) (reasoning that a
> plaintiff is permitted to make allegations based on information and belief
> even under heightened pleading standards, such as those established for
> fraud under Fed. R. Civ. P. 9(b), "when essential information lies uniquely
> within another party's control," at least "if the pleading sets forth the
> specific facts upon which the belief is reasonably based").

*Id.* at 401 (emphasis added) (internal citations omitted). As Chief Judge Kaplan noted, the

Federal Circuit has approved of "information and belief" allegations "'when essential

information lies uniquely within another party's control,' at least 'if the pleading sets forth the

specific facts upon which the belief is reasonably based.'" *Id.* (quoting *Exergen Corp. v. Wal-

Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009)); *see also Innova Hosp. San Antonio, LP

v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730-31 (5th Cir. 2018) ("[W]hile a

plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a

fishing expedition or strike suit, we must also take account of his or her limited access to crucial

information. This is because if plaintiffs cannot state a claim without pleading facts which tend

systemically to be in the sole possession of defendants, the remedial scheme of the statute will

fail, and the crucial rights secured by ERISA will suffer." (citations and internal quotation marks

omitted)); *City of Evanston v. N. Ill. Gas Co.,* 229 F. Supp. 3d 714, 721 (N.D. Ill. 2017)

("Pleading on information and belief is a 'practical necessity' that is 'desirable and essential [ ]

when matters that are necessary to complete the statement of a claim are not within the

knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the

subject.'"); *Gonzalez v. Cnty. of Merced*, No. 116CV01682LJOSAB, 2017 WL 2345681, at *7

(E.D. Cal. May 30, 2017), *report and recommendation adopte*d, No. 1:16-CV-1682-LJO-SAB,

2017 WL 2812928 (E.D. Cal. June 29, 2017) ("Pleading on information and belief is a desirable

and essential expedient when matters that are necessary to complete the statement of a claim are

not within the knowledge of the plaintiff but he has sufficient data to justify interposing an

allegation on the subject." (internal quotation marks omitted)).

8.      The Agency conducted the procurement at issue here under FAR 8.4.  The

Agency provided 22nd Century a sparse "Notice of Unsuccessful Quote" and a "Basis for Award

Decision" letter.  The documents do not provide any more information besides 22nd Century's

adjectival ratings and ███████████████████████████████████

9.      Because the Agency has provided 22nd Century with limited information, it is

absolutely the case that "essential information lies uniquely within" the Agency's control.

Accordingly, 22nd Century bases its allegations below on its own knowledge and, where

appropriate, on information and belief.  Under the applicable pleading standard, 22nd Century's

allegations are more than sufficient to state a claim.  *Exergen Corp.*, 575 F.3d at 1330.

**Factual Allegations**

**A.    The Procurement**

10.    The Agency issued a Solicitation as a competitive acquisition under FAR Part 8.4 as a multiple-award BPA.  The Agency sought a contractor to assist the Enterprise Program Management Office ("EPMO") in providing "end-to-end program management support for the delivery of enterprise-level IT capabilities."  This would include a "full range of delivery services necessary to support program technical and management approaches, organizational resources, and management controls in alignment with program cost, performance requirements and scheduling demands …."

11.    All services under the BPA would be ordered via Task Orders against the BPA. Those services spanned 20 Task Areas, including:

Task Area 1 – Transition Management

Task Area 2 – Release Management

Task Area 3 – Program/Project Management

Task Area 4 – Enterprise Life Cycle ("ELC")

Task Area 5 – Program Integration

Task Area 6 – Technical Integration

Task Area 7 – Business Analysis

Task Area 8 – Requirements Engineering

Task Area 9 – Configuration and Change Management

Task Area 10 – Change Management and Change Control

Task Area 11 – Organizational Readiness

Task Area 12 – Organizational Change Management

Task Area 13 – Engineering and Architecture

Task Area 14 – Enterprise Testing

Task Area 15 – Cybersecurity

Task Area 16 – Applications Development

Task Area 17 – Enterprise Operations ("EOps")

Task Area 18 – Cloud Services

Task Area 19 – Optional Legislation & Initiatives Support

Task Area 20 – Optional Surge Support

12.    The Agency said the awardee(s) should have "expertise in such areas as program and project planning, program/project management and administration, integration services, cyber security services, performance measurements, cost reporting, and recommended solutions based understanding of [the Agency's] information architecture, infrastructure, and organization."

**B.    Evaluation Criteria**

13.    The Agency said it would evaluate proposals and make award to "up to 4" offerors on a best value basis, using a tradeoff analysis.  The Agency's intent was to "award two (2) BPA's to small business and two (2) BPA's to Unrestricted via competition under GSA MAS SIN 54151S NAICS 541519."

14.    The Agency considered multiple factors, including:

Factor 1 – Mandatory Requirements

Factor 2 – Technical Approach

Factor 3 – Management Approach

Factor 4 – Small Business Participation Plan

Factor 5 – Past Performance

Factor 6 – Price Quote

The Agency said that the other factors, when combined, are "significantly more important than price[,]" but "the closer quote technical ratings are to one another, the more important cost/price consideration becomes[.]"

15.     The factors would be evaluated in two phases.  Factor 1 – Mandatory Requirements – was evaluated in Phase 1 as a Pass/Fail requirement.  There, offerors had demonstrate compliance with all mandatory requirements listed in the Solicitation and PWS.  If an offeror received a Pass in Phase 1, the offeror would continue to Phase 2, where the Agency considered the other factors.

16.     Under Factor 2, the Agency said it would "assess each quote to determine whether the contractor's technical solution presents a comprehensive, sound and reasonable approach to meeting the requirements and objectives of the PWS" based on the offeror's Technical Volume and Labor Category Crosswalk.  In its assessment, the Agency would assign each offeror one of the following ratings:

| Rating | Description |
|---|---|
| EXCELLENT | The quote outlines an effective, efficient, and achievable approach for meeting requirements as defined in the PWS.  The |

| | |
|---|---|
| | quote's strengths[1] significantly outweigh any weaknesses,[2] if any, in a manner that will significantly benefit the Government.  There are no significant weaknesses[3] and no deficiencies.[4]  The risk of unsuccessful contract performance is very low. |
| GOOD | The quote outlines an effective, efficient, and achievable approach for meeting requirements as defined in the PWS.  The quote's strengths outweigh any weaknesses in a manner that will benefit the Government.  There are no significant weaknesses and no deficiencies.  The risk of unsuccessful contract performance is low. |
| ACCEPTABLE | The quote outlines an achievable approach for meeting requirements as defined in the PWS.  The quote's strengths, if any, are balanced out by weaknesses.  There are no deficiencies. The risk of unsuccessful contract performance is low to moderate. |
| UNACCEPTABLE | The quote fails to demonstrate an achievable approach for meeting all of the requirements defined in the PWS.  The quote contains a deficiency or multiple significant weaknesses that present an unacceptably high risk of performance failure.  Quote is not eligible for award.  ***Vendors who receive a rating of "Unacceptable" will not be eligible for award.*** |

17.    Under Factor 3 – Management Approach, offerors had to provide an approach "to effectively staff the project and manage all resources assigned to the BPA in support of the

---

[1] The Solicitation defined a "strength" as "an attribute of the offeror's quote that exceeds the specified performance or capability requirements in a way that is beneficial to the Government." It defined a "significant strength" as "an attribute of the offeror's quote that exceeds the specified performance or capability requirements in a way that is substantially beneficial to the Government."

[2] A "weakness" is "an attribute of the offeror's quote which is likely to increase the probability of unsuccessful contract performance."

[3] A "significant weakness" is "an attribute of the offeror's quote which is likely to substantially increase the probability of unsuccessful contract performance."

[4] The Solicitation defined a "deficiency" as "a material failure of a quote to meet a Government requirement or a combination of significant weaknesses in a quote[] that increases the risk of unsuccessful contract performance to an unacceptable level."

PWS."  The offerors had to also address each deliverable requirement in the PWS as well as demonstrate and explain a "proposed solution for meeting the established subcontracting goals … as well as how [they would] manage subcontractor participation."  The Agency would assign each offeror a rating, using the same ratings identified in the chart above for Factor 2.

18.    For Factor 4 – Small Business Participation Plan, the Agency said it would evaluate "the Offeror's approach and techniques that will be used to achieve small business participation."  In the plan, offerors had to "identify the names and roles of the small business Offerors including the type of small business … and the estimated value of each subcontract in relation to the total proposed amount."  The Agency was looking for three elements: (1) the approach to achieving small business participation, (2) how the plan was integrated within the overall management processes, and (3) the measure used to achieve small business subcontracting.  In assessing this information, the Agency said it would "evaluate the plan on its quality, level of appropriate detail, feasibility, cost effectiveness and the Offerors degree of compliance with the Small Business Subcontracting goals[.]"

| Small Business Subcontracting Goals | |
|---|---|
| **Percentage** | **Business Type** |
| 40% | Small Business |
| 5% | Small Disadvantaged Business |
| 3% | Woman-Owned |
| 3% | HUBZone |
| 3% | Small Disadvantaged Veteran-Owned |

Based on this information, the Agency said it would assign one of the following adjectival ratings:

| Small Business Participation Plan Adjectival Ratings | |
|---|---|
| **Rating** | **Description** |
| EXCELLENT | Proposal meets 40% or more small business subcontracting opportunities. |
| ACCEPTABLE | Proposal meets 20% - 39% or more small business subcontracting opportunities. |
| UNACCEPTABLE | Proposal is less than 20% small business subcontracting goals (Treasury's minimum). [T]hey will [] receive an unacceptable rating and are ineligible for award. |

19.     Under Factor 5 – Past Performance, the Agency said it would evaluate "relevant corporate past performance managing contracts similar in size, scope and complexity to that contemplated by the [S]olicitation" based on "two (2) CPARS or completed PPQ's or a combination of a CPARS and a PPQ."  The Agency considered past performance relevant "when an Offeror has been confronted with the kinds of challenges and risks contemplated by the [S]olicitation."  To be evaluated, it must have been "performed within the past three (3) years." In this assessment, the Agency would assign one of the following adjectival ratings:

| Past Performance Adjectival Ratings | |
|---|---|
| Rating[5] | Description |
| EXCELLENT | Highly relevant past performance record involving contracts similar in size, scope, and complexity to the [S]olicitation requirements that satisfy the minimum dollar value of $5M[ and] are within the last 3 years.  Performance significantly and consistently exceeds contract requirements to the customer[']s benefit.  There were no quality, cost or schedule issues identified.  Risk to successful performance is low. |
| GOOD | Highly relevant past performance record involving contracts similar in size, scope, and complexity to the [S]olicitation requirements that satisfy the minimum dollar value of $5M[ and] are within the last 3 years.  Performance meets all contractual requirements and exceeds some to the customers benefit.  The contractual performance of the element being assessed was accomplished with some minor problems for which corrective actions taken by the Contractor were effective.  Risk to successful performance is low. |
| ACCEPTABLE | Relevant or highly relevant past performance record involving contracts of similar size, scope, and complexity to the [S]olicitation requirements that satisfy the minimum dollar value of $5M[ and] are within the last 3 years.  Performance meets contractual requirements.  The contractual performance of the element contains some minor problems for which proposed corrective actions taken by the Contractor appear satisfactory, or completed corrective actions were satisfactory.  There is an acceptable amount of risk to successful contract performance. |
| NEUTRAL | The absence of relevant present or past performance information will result in the assignment of a neutral rating.  Unknown risk.  (The Contractor has little or no recent/relevant past performance upon which to base a meaningful performance risk prediction.) |

---

[5] The Solicitation does not contain an adjectival rating for adverse or unacceptable past performance information.  The ratings stop at "Neutral."  However, the Solicitation does state that "[n]egative feedback … may result in an unacceptable rating."

20.     For Factor 6 – Price, the Agency would evaluate but would not rate or score the evaluated total price, which would include "the base period, option periods, extension under FAR 52.217-8 and all other costs or prices[.]"  Although the Agency did not commit to conducting a price realism analysis, the Agency did say that it would evaluate each offeror's price to determine if it was fair and reasonable.

**C.     Evaluation and Award**

21.     The Agency received 27 quotes in response to the Solicitation, including 22nd Century's, with a total price of ███████████  On July 25, the Agency told 22nd Century that although its quote was ███████████████  it was not the best value.  The Agency gave 22nd Century the following ratings:



22.     Despite giving 22nd Century only an ███████████████████, the Agency awarded 22nd Century ████ strengths under this Factor.  The Agency said this:



The Agency did not give 22nd Century any ██████████ under any Factor.

23.     The Agency made award to five offerors, three small businesses and two other than small businesses.[6]  The Agency rated them as follows:

---

[6] Integrated Systems, Inc., Centennial Technologies, Inc., and Etelligent Group, LLC, are the small business awardees.  Deloitte Consulting, LLP, and Noblis, Inc., are the other than small business awardees.

| Awardee | Total Evaluated Price | Technical Approach[7] Rating |
|---|---|---|
| Integrated Systems, Inc. | $543,142,226.55 | ███████ |
| Deloitte Consulting, LLP | $657,011,730.00 | ███████ |
| Centennial Technologies, Inc. | $599,039,216.00 | ███████ |
| Etelligent Group, LLC | $602,711,973.00 | ███████ |
| Noblis, Inc. | $610,213,633.00 | ███████ |

**Count I**
**The Agency deviated from the Solicitation in its evaluation of Factor 2 – Technical Approach**

24.     22nd Century adopts and incorporates by reference the allegations of the paragraphs above, as if fully set forth herein.

25.     "Generally speaking, an agency must evaluate an offeror's proposal based on the criteria set out in the solicitation." *Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 383 (2017); *OTI Am., Inc. v. United States*, 68 Fed. Cl. 646, 655 (2005) (quoting *Banknote Corp. of Am. v. United States,* 56 Fed. Cl. 377, 386 (2003), *aff'd,* 365 F.3d 1345 (Fed. Cir. 2004)); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 652 (2003) (quoting *Dubinsky v. United States,* 43 Fed.Cl. 243, 259 (1999)) ("[A]s this Court has recognized, 'making offerors aware of the rules of the game in which they seek to participate is fundamental to fairness and open competition.'").

---

[7] Even though Factor 2 is specifically called "Technical Approach," the Agency said that "Technical Approach" in a context such as this includes all non-price factors.

The Agency departed from this principle in its evaluation of 22nd Century's proposal under Factor 2 – Technical Approach.

26.     For Factor 2, the Agency said it would assign an "Excellent" rating to quotes whose "strengths significantly outweigh any weaknesses, if any, in a manner that will significantly benefit the Government."  On the other hand, an "Acceptable" rating is one where "[t]he quote's strengths, if any, are balanced out by weaknesses."

27.     The Agency rated 22nd Century ██████████ despite awarding 22nd Century ███ ██████████████████. This meets the definition of ████████ because ████████ that span over three of the Agency's distinct Task Areas significantly outweigh █████████████

28.     These ████████ also "significantly benefit" the Agency. ██████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████ ████████ The Agency's own words symbolize a very low risk of unsuccessful contract performance—a hallmark characteristic of an "Excellent" rating.

29.     The Agency deviated from the Solicitation when it assigned 22nd Century an ████████ rating instead of an "Excellent" one.  Doing so was unreasonable.

30.     The Agency's error prejudiced 22nd Century.  It is clear that, properly evaluated, 22nd Century stood a substantial chance of award.  As described above, 22nd Century should have been rated "Excellent" under Factor 2 – Technical Approach.  This would give 22nd

Century at a minimum ████████████████████████████████████████

████████████████████████████████████.  Had the Agency properly evaluated

proposals, there is a substantial chance that 22nd Century would have received award.

## Count II
## The Agency unreasonably evaluated 22nd Century under Factor 3 – Management Approach

31.    22nd Century adopts and incorporates by reference the allegations of the

paragraphs above, as if fully set forth herein.

32.    As mentioned previously, an agency acts unreasonably when it deviates from the

evaluation scheme announced in the Solicitation.  *See, e.g.*, *GTA Containers, Inc. v. United

States*, 103 Fed. Cl. 471, 491 (2012).

33.    Here, the Agency said it would "evaluate the Offeror's approach to effectively

manage the project schedule, costs, deliverables, and personnel."  Further, the Agency said it

would award strengths for "an attribute of the offeror's quote that exceeds the specified

performance or capability requirements in a way that is beneficial to the Government."  The

Agency's evaluation of Factor 3 – Management Approach departed from these principles.

34.    22nd Century highlighted various strengths throughout its Management Approach

volume.  ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

16

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

35.    That is not all.  22nd Century ██████████████████████████████

███████████ and has a ████████████████████████████████ 22nd Century

also provides the Agency with███████████████████████████████████████

Clearly, 22nd Century's experience, especially with ████████████████████, certainly

shows 22nd Century's capability to manage the project schedule, costs, deliverables, and

personnel, above and beyond the Agency's expectation.

36.    Throughout its Management Approach volume, 22nd Century showed the success

of its process on other IRS contracts.  22nd Century said that under ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ These features of 22nd Century's proposal

warranted strengths.  The Agency unreasonably failed to award them.

37.    With these ██ strengths and ██ weaknesses, 22nd Century would have received

an ███████ rating.

38.    The Agency's error prejudiced 22nd Century.  It is clear that, properly evaluated,

22nd Century stood a substantial chance of award.  As described above, 22nd Century should

17

████████████████████████████████████████████████████

have been rated "Excellent" under Factor 3 – Management Approach.  This would give 22nd

Century ███████████████████████████████████████████████

███████████████████████████████.  Had the Agency properly evaluated

proposals, there is a substantial chance that 22nd Century would have received award.

**Count III**
**The Agency unreasonably evaluated 22nd Century under Factor 5 – Past Performance**

39.     22nd Century adopts and incorporates by reference the allegations of the

paragraphs above, as if fully set forth herein.

40.     Again, an agency acts unreasonably when it deviates from the evaluation scheme

announced in the Solicitation.  *See, e.g.*, *GTA Containers, Inc.*, 103 Fed. Cl. at 491.  The Agency

said that offerors would receive an "Excellent" rating by proposing "[h]ighly relevant past

performance" that "significantly and consistently exceed[ed] contract requirements to the

customers benefit" and had "no quality, cost or schedule issues identified[.]"

41.     22nd Century's past performance record is clearly "[h]ighly relevant."

Specifically, 22nd Century included this chart in its Past Performance volume detailing how its

experience spans over all of the Task Areas required by the PWS.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████



These ███████████████████████████████████████████████

42.    22nd Century also highlighted ████ contracts relevant in size, scope and complexity, have minimum dollar value of at least $5 million, and were performed within the last three years.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

There were not any quality, cost or schedule issues identified with these contracts. 22nd Century's past performance meets the definition of an ████████ rating. The Agency acted unreasonably by giving 22nd Century a ████████ rating.

43.    The Agency's error prejudiced 22nd Century. It is clear that, properly evaluated, 22nd Century stood a substantial chance of award. As described above, 22nd Century should have been rated ████████ under Factor 5 – Past Performance. This would give 22nd Century

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████.  Had the Agency properly evaluated proposals, there is a substantial chance that 22nd Century would have received award.

### Count IV
### The Agency's award decision was unreasonable and relied on a flawed evaluation

44.    22nd Century adopts and incorporates by reference the allegations of the paragraphs above, as if fully set forth herein.

45.    The Agency must consider price in FAR 8.4 procurements.  *See* 48 C.F.R. § 8.405-3(a)(2) (noting factors the agency may consider when determining the best value "[i]n addition to price").  Although the process under FAR 8.4 is streamlined compared to Part 15, the Agency must still document its rationale for any tradeoffs.  Decisions under 8.4 are subject to review under the same arbitrary and capricious standard this Court applies in all bid protests.  This award decision was flawed for two reasons.

46.    First, in making the source selection decision, the Agency should have recognized the evaluation errors mentioned above and corrected 22nd Century's ratings, but failed to do so.  Allowing the evaluation errors to infect the award decision made that decision irrational.  *See, e.g.*, *BayFirst Sols., LLC v. United States*, 102 Fed. Cl. 677, 694 (2012) ("A tradeoff analysis based on significantly flawed evaluation ratings is itself irrational.").

47.    Second, the award decision minimized price.  The goverment may not minimize the impact of price as to render it a nominal evaluation factor.  *See, e.g.*, *Serco Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008).  True, the Solicitation said that other factors, when combined, are "significantly more important than price" and the other than small business awardees (Deloitte and Noblis) had █████technical ratings than 22nd Century as currently

(improperly) evaluated.  It is also true that 22nd Century had a ▮▮▮▮▮▮▮▮ than Deloitte and Noblis.  This is a difference that has to play a role in the Agency's award decision.

48.    Upon information and belief, the Agency's award decision was laser focused on the non-price ratings and failed to consider that 22nd Century was well rated (even as improperly evaluated) and offered a significant price savings.  By minimizing the impact of price, the Agency made an unreasonable award decision.

49.    The Agency's error(s) prejudiced 22nd Century.  It is clear that, properly evaluated, 22nd Century stood a substantial chance of award.  As described above, 22nd Century's proposal complied with the Solicitation and should have been rated ▮▮▮▮▮ overall.  Had the Agency properly evaluated proposals, 22nd Century stood a substantial chance of award with ▮▮▮▮▮▮ to the awardees and a ▮▮▮▮▮▮▮▮▮▮ than the other than small business awardees.

## Prayer for Relief

WHEREFORE, 22nd Century requests that this Court:

A.    Enter a preliminary injunction prohibiting the Agency from proceeding with performance pending the outcome of this protest;[8]

B.    Declare that the Agency's evaluation and award decision were irrational, arbitrary, capricious, an abuse of discretion, and contrary to law;

---

[8] Since filing the pre-filing notice, we have had several discussions with DOJ and expect to work out a stay and schedule that avoids preliminary injunction proceedings.  For that reason, we have not filed such a motion with this Court, but will do so if circumstances change.

C.      Permanently enjoin the Agency from proceeding with performance;

D.      Require the Agency to perform a new evaluation and make a new award decision; and

E.      Award 22nd Century such other and further relief as this Court may deem just and proper, including, without limitation, bid and proposal costs.

Dated:  August 9, 2024                          Respectfully submitted,


/s/ W. Brad English
W. Brad English
Emily J. Chancey
Taylor R. Holt

MAYNARD NEXSEN, PC
655 Gallatin Street
Huntsville, Alabama 35801
256.512.5705
benglish@maynardnexsen.com


**Certificate of Service**

I hereby certify that on August 9, 2024, I caused copies of the foregoing to be served by electronic mail upon the following:

U.S. Department of Justice
Commercial Litigation Branch
National Courts Section
P.O. Box 480
Ben Franklin Station
Washington, D.C., 20044


/s/ W. Brad English
Of Counsel