**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | |
|---|---|
| **FEDTEC, LLC,** | Redacted Version |
| *Plaintiff,* | Case No. _____ |
| v. | Judge _____ |
| **UNITED STATES,** | |
| *Defendant.* | |

**COMPLAINT**

For its bid protest complaint against the United States of America, Plaintiff FedTec, LLC, shows the Court as follows:

**Nature of the Action**

1.  This bid protest involves Request for Quote No. 2032H5-23-Q-08246 / GSA RFQ 1666303 (the "Solicitation") issued by the Department of the Treasury, Internal Revenue Service (the "Agency"). FedTec protests the Agency's decision to make award to Integrated Systems, Inc., Deloitte Consulting, LLP, Centennial Technologies Inc., Etelligent Group, LLC, and Noblis, Inc.

**The Parties**

2.  FedTec is a Virginia limited liability company.

3.  Defendant the United States of America, for all purposes relevant hereto, acted by and through the Agency.

**Jurisdiction**

4.  This Court has jurisdiction to hear this bid protest pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. 28 U.S.C. § 1491(b)(1).

5.  The Agency awarded the task order at issue under a GSA Multiple Award Schedule contract. Thus, the Federal Acquisition Streamlining Act of 1994 does not deprive the Court of jurisdiction. *See Data Mgmt. Servs. Joint Venture v. United States*, 78 Fed Cl. 366, 371 (2007).

6.  FedTec is an interested party in this case. FedTec was previously known as FreeAlliance and submitted its proposal under that name. (*See* Attachment 1.) However, FreeAlliance thereafter changed its name to FedTec and alerted the Agency to this change. (*See* Attachment 2.) Therefore, FedTec is an interested party.

**The Applicable Pleading Standard**

7.  The *Twombly / Iqbal* pleading standard applies at the U.S. Court of Federal Claims. *See Vanquish Worldwide, LLC v. United States*, 147 Fed. Cl. 390, 399 (2020). However, as (now) Chief Judge Kaplan noted in that decision, "a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'" *Id.* (quoting *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, under *Iqbal*, "[a] claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Vanquish Worldwide, LLC*, 147 Fed. Cl. at 399 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

8. The *Vanquish* decision involved appeals under the Contract Disputes Act. *See id.* at 398. The government moved to dismiss the plaintiff's complaint for failure to state a claim, alleging that its breach claims were based on "mere 'suspicions,'" that did not meet the pleading standards under *Twombly* and Rule 8, RCFC. *Id.* at 401. Chief Judge Kaplan disagreed and wrote:

> Fairly read, Vanquish's complaint alleges as a matter of fact that USTRANSCOM did not follow the OML process and that, had it been followed, Vanquish would have been assigned more missions than in fact it was assigned. **To be sure, Vanquish makes this allegation "on information and belief.**" But that does not preclude it from meeting the *Twombly* plausibility standard, as the government contends. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (observing that "[t]he *Twombly* plausibility standard ... does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible"); 5 Arthur R. Miller et al., *Federal Practice and Procedure* § 1224 (3d ed. 1998) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the Twombly and Iqbal decisions."); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) (reasoning that a plaintiff is permitted to make allegations based on information and belief even under heightened pleading standards, such as those established for fraud under Fed. R. Civ. P. 9(b), "when essential information lies uniquely within another party's control," at least "if the pleading sets forth the specific facts upon which the belief is reasonably based").

*Id.* at 401 (emphasis added) (internal citations omitted). As Chief Judge Kaplan noted, the Federal Circuit has approved of "information and belief" allegations "'when essential information lies uniquely within another party's control,' at least 'if the pleading sets forth the specific facts upon which the belief is reasonably based.'" *Id.* (quoting *Exergen Corp. v. Wal-*

3

*Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009)); *see also Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730-31 (5th Cir. 2018) ("[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of his or her limited access to crucial information. This is because if plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." (citations and internal quotation marks omitted)); *City of Evanston v. N. Ill. Gas Co.,* 229 F. Supp. 3d 714, 721 (N.D. Ill. 2017) ("Pleading on information and belief is a 'practical necessity' that is 'desirable and essential [ ] when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject.'"); *Gonzalez v. Cnty. of Merced*, No. 116CV01682LJOSAB, 2017 WL 2345681, at *7 (E.D. Cal. May 30, 2017), *report and recommendation adopte*d, No. 1:16-CV-1682-LJO-SAB, 2017 WL 2812928 (E.D. Cal. June 29, 2017) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." (internal quotation marks omitted)).

9. The Agency conducted the procurement at issue here under FAR 8.4. The Agency did not provide FedTec any indication of its ratings. In fact, the Agency did not even provide FedTec an award notice.

10. Because the Agency has not provided FedTec with any information, it is absolutely the case that "essential information lies uniquely within" the Agency's control. Accordingly, FedTec bases its allegations below on its own knowledge and, where appropriate,

on information and belief. Under the applicable pleading standard, FedTec's allegations are more than sufficient to state a claim. *Exergen Corp.*, 575 F.3d at 1330.

## Factual Allegations

**A.     The Procurement**

11.     The Agency issued a Solicitation as a competitive acquisition under FAR Part 8.4 as a multiple-award BPA. The Agency sought a contractor to assist the Enterprise Program Management Office ("EPMO") in providing "end-to-end program management support for the delivery of enterprise-level IT capabilities." This would include a "full range of delivery services necessary to support program technical and management approaches, organizational resources, and management controls in alignment with program cost, performance requirements and scheduling demands …."

12.     All services under the contract would be ordered via Task Orders against the BPA. Those services spanned 20 Task Areas, including:

>Task Area 1 – Transition Management
>
>Task Area 2 – Release Management
>
>Task Area 3 – Program/Project Management
>
>Task Area 4 – Enterprise Life Cycle ("ELC")
>
>Task Area 5 – Program Integration
>
>Task Area 6 – Technical Integration
>
>Task Area 7 – Business Analysis
>
>Task Area 8 – Requirements Engineering
>
>Task Area 9 – Configuration and Change Management

5

    Task Area 10 – Change Management and Change Control

    Task Area 11 – Organizational Readiness

    Task Area 12 – Organizational Change Management

    Task Area 13 – Engineering and Architecture

    Task Area 14 – Enterprise Testing

    Task Area 15 – Cybersecurity

    Task Area 16 – Applications Development

    Task Area 17 – Enterprise Operations ("EOps")

    Task Area 18 – Cloud Services

    Task Area 19 – Optional Legislation & Initiatives Support

    Task Area 20 – Optional Surge Support

13.    The Agency said the awardee(s) should have "expertise in such areas as program and project planning, program/project management and administration, integration services, cyber security services, performance measurements, cost reporting, and recommended solutions based understanding of [the Agency's] information architecture, infrastructure, and organization."

**B.    Evaluation Criteria**

14.    The Agency said it would evaluate proposals and make award to "up to 4" offerors on a best value basis, using a tradeoff analysis. The Agency's intent was to "award two (2) BPA's to small business and two (2) BPA's to Unrestricted via competition under GSA MAS SIN 54151S NAICS 541519."

15.    The Agency considered multiple factors, including:

> Factor 1 – Mandatory Requirements
>
> Factor 2 – Technical Approach
>
> Factor 3 – Management Approach
>
> Factor 4 – Small Business Participation Plan
>
> Factor 5 – Past Performance
>
> Factor 6 – Price Quote

The Agency said that the other factors, when combined, are "significantly more important than price[,]" but "the closer quote technical ratings are to one another, the more important cost/price consideration becomes[.]"

16.    The factors would be evaluated in two phases. Factor 1 – Mandatory Requirements – was evaluated in Phase 1 as a Pass/Fail requirement. There, offerors had demonstrate compliance with all mandatory requirements listed in the Solicitation and PWS. If an offeror received a Pass in Phase 1, the offeror would continue to Phase 2, where the Agency considered the other factors.

17.    Under Factor 2, the Agency said it would "assess each quote to determine whether the contractor's technical solution presents a comprehensive, sound and reasonable approach to meeting the requirements and objectives of the PWS" based on the offeror's Technical Volume and Labor Category Crosswalk. In its assessment, the Agency would assign each offeror one of the following ratings:

| Rating | Description |
|---|---|
| EXCELLENT | The quote outlines an effective, efficient, and achievable approach for meeting requirements as defined in the PWS.  The quote's strengths[1] significantly outweigh any weaknesses,[2] if any, in a manner that will significantly benefit the Government.  There are no significant weaknesses[3] and no deficiencies.[4]  The risk of unsuccessful contract performance is very low. |
| GOOD | The quote outlines an effective, efficient, and achievable approach for meeting requirements as defined in the PWS.  The quote's strengths outweigh any weaknesses in a manner that will benefit the Government.  There are no significant weaknesses and no deficiencies.  The risk of unsuccessful contract performance is low. |
| ACCEPTABLE | The quote outlines an achievable approach for meeting requirements as defined in the PWS.  The quote's strengths, if any, are balanced out by weaknesses.  There are no deficiencies.  The risk of unsuccessful contract performance is low to moderate. |
| UNACCEPTABLE | The quote fails to demonstrate an achievable approach for meeting all of the requirements defined in the PWS.  The quote contains a deficiency or multiple significant weaknesses that present an unacceptably high risk of performance failure.  Quote is not eligible for award.  ***Vendors who receive a rating of "Unacceptable" will not be eligible for award.*** |

---

[1] The Solicitation defined a "strength" as "an attribute of the offeror's quote that exceeds the specified performance or capability requirements in a way that is beneficial to the Government." It defined a "significant strength" as "an attribute of the offeror's quote that exceeds the specified performance or capability requirements in a way that is substantially beneficial to the Government."

[2] A "weakness" is "an attribute of the offeror's quote which is likely to increase the probability of unsuccessful contract performance."

[3] A "significant weakness" is "an attribute of the offeror's quote which is likely to substantially increase the probability of unsuccessful contract performance."

[4] The Solicitation defined a "deficiency" as "a material failure of a quote to meet a Government requirement or a combination of significant weaknesses in a quote[] that increases the risk of unsuccessful contract performance to an unacceptable level."

18.     Under Factor 3 – Management Approach, offerors had to provide an approach "to effectively staff the project and manage all resources assigned to the BPA in support of the PWS."  The offerors had to also address each deliverable requirement in the PWS as well as demonstrate and explain a "proposed solution for meeting the established subcontracting goals … as well as how [they would] manage subcontractor participation."  The Agency would assign each offeror a rating, using the same ratings identified in the chart above for Factor 2.

19.     For Factor 4 – Small Business Participation Plan, the Agency said it would evaluate "the Offeror's approach and techniques that will be used to achieve small business participation."  In the plan, offerors had to "identify the names and roles of the small business Offerors including the type of small business … and the estimated value of each subcontract in relation to the total proposed amount."  The Agency was looking for three elements: (1) the approach to achieving small business participation, (2) how the plan was integrated within the overall management processes, and (3) the measure used to achieve small business subcontracting.  In assessing this information, the Agency said it would "evaluate the plan on its quality, level of appropriate detail, feasibility, cost effectiveness and the Offerors degree of compliance with the Small Business Subcontracting goals[.]"

| Small Business Subcontracting Goals | |
|---|---|
| **Percentage** | **Business Type** |
| 40% | Small Business |
| 5% | Small Disadvantaged Business |
| 3% | Woman-Owned |
| 3% | HUBZone |

|  |  |
|---|---|
| 3% | Small Disadvantaged Veteran-Owned |

Based on this information, the Agency said it would assign one of the following adjectival ratings:

| Small Business Participation Plan Adjectival Ratings ||
|---|---|
| Rating | Description |
| EXCELLENT | Proposal meets 40% or more small business subcontracting opportunities. |
| ACCEPTABLE | Proposal meets 20% - 39% or more small business subcontracting opportunities. |
| UNACCEPTABLE | Proposal is less than 20% small business subcontracting goals (Treasury's minimum). [T]hey will [] receive an unacceptable rating and are ineligible for award. |

20.     Under Factor 5 – Past Performance, the Agency said it would evaluate "relevant corporate past performance managing contracts similar in size, scope and complexity to that contemplated by the [S]olicitation" based on "two (2) CPARS or completed PPQ's or a combination of a CPARS and a PPQ." The Agency considered past performance relevant "when an Offeror has been confronted with the kinds of challenges and risks contemplated by the [S]olicitation." To be evaluated, it must have been "performed within the past three (3) years." In this assessment, the Agency would assign one of the following adjectival ratings:

| Past Performance Adjectival Ratings ||
| Rating[5] | Description |
|---|---|
| EXCELLENT | Highly relevant past performance record involving contracts similar in size, scope, and complexity to the [S]olicitation requirements that satisfy the minimum dollar value of $5M[ and] are within the last 3 years.  Performance significantly and consistently exceeds contract requirements to the customer[']s benefit.  There were no quality, cost or schedule issues identified.  Risk to successful performance is low. |
| GOOD | Highly relevant past performance record involving contracts similar in size, scope, and complexity to the [S]olicitation requirements that satisfy the minimum dollar value of $5M[ and] are within the last 3 years.  Performance meets all contractual requirements and exceeds some to the customers benefit.  The contractual performance of the element being assessed was accomplished with some minor problems for which corrective actions taken by the Contractor were effective.  Risk to successful performance is low. |
| ACCEPTABLE | Relevant or highly relevant past performance record involving contracts of similar size, scope, and complexity to the [S]olicitation requirements that satisfy the minimum dollar value of $5M[ and] are within the last 3 years.  Performance meets contractual requirements.  The contractual performance of the element contains some minor problems for which proposed corrective actions taken by the Contractor appear satisfactory, or completed corrective actions were satisfactory.  There is an acceptable amount of risk to successful contract performance. |
| NEUTRAL | The absence of relevant present or past performance information will result in the assignment of a neutral rating.  Unknown risk.  (The Contractor has little or no recent/relevant past performance upon which to base a meaningful performance risk prediction.) |

---

[5] The Solicitation does not contain an adjectival rating for adverse or unacceptable past performance information.  The ratings stop at "Neutral."  However, the Solicitation does state that "[n]egative feedback … may result in an unacceptable rating."

11

21. For Factor 6 – Price, the Agency would evaluate but would not rate or score the evaluated total price, which would include "the base period, option periods, extension under FAR 52.217-8 and all other costs or prices[.]"  Although the Agency did not commit to conducting a price realism analysis, the Agency did say that it would evaluate each offeror's price to determine if it was fair and reasonable.

C. **Evaluation and Award**

22. FedTec submitted a timely proposal to the Solicitation.  (Attachment 1.) FedTec's total price was ███████████  However, the Agency did not provide FedTec with any indication of its ratings or even an award notice.  This protest follows.

**Count I**
**The Agency's evaluation of FedTec's proposal was unreasonable**

23. FedTec adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

24. "Generally speaking, an agency must evaluate an offeror's proposal based on the criteria set out in the solicitation." *Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 383 (2017); *OTI Am., Inc. v. United States*, 68 Fed. Cl. 646, 655 (2005) (quoting *Banknote Corp. of Am. v. United States,* 56 Fed. Cl. 377, 386 (2003), *aff'd,* 365 F.3d 1345 (Fed. Cir. 2004)); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 652 (2003) (quoting *Dubinsky v. United States,* 43 Fed.Cl. 243, 259 (1999)) ("[A]s this Court has recognized, 'making offerors aware of the rules of the game in which they seek to participate is fundamental to fairness and open competition.'"). The Agency departed from this principle in its evaluation of FedTec's proposal.

25.     FedTec submitted all information required by the Solicitation.  Specifically, for Factor 1 – Mandatory Requirements, the Agency required offerors to submit all mandatory requirements described in the PWS and address the four mandatory experience requirements.  FedTec did, within the Agency's 7-page limit, in Volume I of its proposal submission.  FedTec should have received a "Pass" under Factor 1 – Mandatory Requirements.

26.     FedTec also provided a detailed approach to meeting the requirements and objectives of all 20 Task Areas of the PWS, as required by Factor 2 – Technical Approach.  But FedTec did not just meet requirements; FedTec surpassed them.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Part of FedTec's response said this:



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ certainly exceeds a capability requirement in a way that is beneficial to the Agency.  This warrants a strength.

27.     That is not all.  When addressing Task Area 8 – Requirements Engineering, FedTec said that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This expertise goes beyond the Agency's

13

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

requirements and benefits the Agency by instilling confidence in the Agency of successful contract performance. This also another aspect of FedTec's proposal, among others, that warrants a strength. Altogether, FedTec's proposal under Factor 2 – Technical Approach demonstrates "an effective, efficient, and achievable approach" with "strengths [that] significantly outweigh any weaknesses, if any[.]" FedTec should be rated "Excellent" under Factor 2.

28.     Under Factor 3 – Management Approach, offerors had to show their approach "to effectively manage the project schedule, deliverables, and personnel." FedTec's proposal exceeded requirements. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This benefits the Agency by ████████████████ This is just one aspect that warrants a strength for this factor. FedTec's proposal under Factor 3 – Management Approach demonstrates "an effective, efficient, and achievable approach" with "strengths [that] significantly outweigh any weaknesses, if any[.]" FedTec should be rated "Excellent" under Factor 3.

29.     For Factor 4 – Small Business Participation Plan, the Agency said that offerors would receive an "Excellent" rating where the plan is "clear, provides sufficient detail to meet or exceed 40% or more small business subcontracting opportunities." FedTec accomplished this in Volume III of its proposal. FedTec said provided the following chart before describing its plan in depth:



FedTec clearly met the requirements for an "Excellent" rating for Factor 4.

30.  Finally, under Factor 5 – Past Performance, the Agency said that offerors would receive an "Excellent" rating by proposing "[h]ighly relevant past performance" that "significantly and consistently exceed[ed] contract requirements to the customers benefit" and had "no quality, cost or schedule issues identified[.]"  FedTec submitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  As such, FedTec should be rated "Excellent" for Factor 5.   With all non-price factors receiving "Excellent" ratings, FedTec should be "Excellent" overall.

31.  The Agency's error prejudiced FedTec.  It is clear that, properly evaluated, FedTec, with a competitive price, stood a substantial chance of award.  The Court should sustain this protest.

## Count II
### The Agency's award decision was unreasonable and relied on a flawed evaluation

32.  FedTec adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

15

33. Although the process under FAR 8.4 is streamlined compared to Part 15, the Agency must still document its rationale for any tradeoffs. Decisions under 8.4 are subject to review under the same arbitrary and capricious standard this Court applies in all bid protests.

34. In making the source selection decision, the Agency should have recognized the evaluation errors mentioned above and corrected FedTec's ratings, but failed to do so. Allowing the evaluation errors to infect the award decision made that decision irrational. *See, e.g., BayFirst Sols., LLC v. United States*, 102 Fed. Cl. 677, 694 (2012) ("A tradeoff analysis based on significantly flawed evaluation ratings is itself irrational.").

35. The Agency's error(s) prejudiced FedTec. It is clear that, properly evaluated, FedTec stood a substantial chance of award. As described above, FedTec's proposal complied with the Solicitation and should have been rated "Excellent" overall. Had the Agency properly evaluated proposals, FedTec stood a substantial chance of award with a competitive price.

**Prayer for Relief**

WHEREFORE, FedTec requests that this Court:

A. Enter a preliminary injunction prohibiting the Agency from proceeding with performance pending the outcome of this protest;[6]

B. Declare that the Agency's evaluation and award decision were irrational, arbitrary, capricious, an abuse of discretion, and contrary to law;

---

[6] Since filing the pre-filing notice, we have had several discussions with DOJ and expect to work out a stay and schedule that avoids preliminary injunction proceedings. For that reason, we have not filed such a motion with this Court, but will do so if circumstances change.

    C.     Permanently enjoin the Agency from proceeding with performance;

    D.     Require the Agency to perform a new evaluation and make a new award decision; and

    E.     Award FedTec such other and further relief as this Court may deem just and proper, including, without limitation, bid and proposal costs.

Dated: August 9, 2024                                  Respectfully submitted,

                                                                              /s/ W. Brad English
                                                                              W. Brad English
                                                                              Emily J. Chancey
                                                                              Taylor R. Holt

                                                                              MAYNARD NEXSEN, PC
                                                                              655 Gallatin Street
                                                                              Huntsville, Alabama 35801
                                                                              256.512.5705
                                                                              benglish@maynardnexsen.com

## Certificate of Service

I hereby certify that on August 9, 2024, I caused copies of the foregoing to be served by electronic mail upon the following:

        U.S. Department of Justice
        Commercial Litigation Branch
        National Courts Section
        P.O. Box 480
        Ben Franklin Station
        Washington, D.C., 20044

                                                                              /s/ W. Brad English
                                                                              Of Counsel